Case No. 3:25-mj-71397 LB

**BIMAL K. SAREEN**
12010 Ridge Knoll Drive, Apt 6
Fairfax, Virginia 22033
Telephone: (703) 477-9672
Email: bksareen9@gmail.com
*Movant, Pro Se*

CV25    80385MISC

LB

FILED
DEC 11 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

In the Matter of the Search of
Information Stored at Premises
Controlled by Google LLC           Case No. 3:25-mj-71397 LB
(Email Account: bksareen@gmail.com)

**EMERGENCY MOTION FOR STAY OF PRODUCTION,**

**EXTENSION OF TIME, AND ESTABLISHMENT OF**

**CONSTITUTIONALLY REQUIRED PRIVILEGE PROTOCOL**

**I. INTRODUCTION**

Movant Bimal K. Sareen, a United States citizen and Virginia resident with no criminal record, respectfully seeks emergency relief from this Court to prevent the irreversible disclosure of privileged attorney-client communications to a foreign government. Google LLC has set a deadline of **December 10, 2025** for production of data pursuant to a Search and Seizure Warrant issued under 18 U.S.C. § 3512—the statutory mechanism for executing Mutual Legal Assistance Treaty ("MLAT") requests—that contains only a generic minimization sentence and no meaningful protocol for protecting attorney-client privileged communications.

This motion presents questions of first impression in this circuit regarding the application of the Ninth Circuit's landmark electronic search precedents to MLAT warrants. Binding circuit authority establishes that "*[t]he process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect.*" *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) ("*CDT*"). The Ninth Circuit has further warned that "a pressing need of law enforcement for broad authorization to examine electronic records . . . creates a serious risk that *every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant.*" *Id.* at 1176.

The MLAT context heightens these concerns exponentially. Unlike domestic warrants where privilege violations might—at least theoretically—be remedied through suppression, once Movant's privileged communications are transmitted through diplomatic channels to Indian authorities, no U.S. court retains practical jurisdiction to retrieve them. The harm is categorical and irreversible. As the Supreme Court recognized in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108 (2009), the "*right to maintain attorney-client confidences—the*

1

*sine qua non of a meaningful attorney-client relationship—is 'irreparably destroyed' absent immediate relief.*

This is not the first time Movant's data has been sought through legal process. On October 8, 2024—more than fourteen months ago—Google notified Movant of a *separate* legal process in Case No. 3:24-mj-71385 AGT seeking the same account. No motion was filed in response to that notification. Movant does not know whether data was produced in response to that earlier process. If production occurred, Movant's attorney-client privileged communications may have *already* been disclosed to government agents without any privilege protocol—demonstrating that the harm Movant fears is not merely prospective.

The inadequacy of the Warrant's privilege protections is not a matter of mere inconvenience—it is a constitutional deficiency. As the Sixth Circuit observed, when government agents alone determine what is privileged, "*the government's fox is left in charge of the [privilege holder's] henhouse, and may err by neglect or malice, as well as by honest differences of opinion.*" *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006). The Fourth Circuit has held that "*a court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute.*" *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 176 (4th Cir. 2019).

## II. STATEMENT OF ISSUES

1. Whether the Court should stay production pending resolution of Movant's substantive challenges and establishment of a privilege protocol consistent with the Ninth Circuit's requirements in *Comprehensive Drug Testing* and *Tamura*.

2. Whether the Court should grant Movant an extension of time to retain qualified counsel to challenge the Warrant, consistent with the *Pioneer Investment Services* factors and Ninth Circuit precedent on pro se liberal construction.

3. Whether the Warrant's minimization provision—which contains no filter team protocol, no separation of personnel, no mechanism for privilege holder input, and no waiver of the plain view doctrine—satisfies the constitutional requirements articulated in *CDT* and *Tamura*.

4. Whether the MLAT context—involving transmission of data to a foreign government with no mechanism for retrieval—requires heightened privilege protections beyond those applicable to purely domestic warrants.

5. Whether the government should be required to disclose whether data was produced in response to the October 2024 legal process and, if so, what privilege protocols were employed and whether privileged materials have already been transmitted to foreign authorities.

## III. FACTUAL BACKGROUND

### A. The October 2024 Legal Process

On October 8, 2024, Movant received an email notification from Google stating that it had "received legal process issued by the Federal Bureau of Investigation compelling the release of information related to [his] Google account." The notification referenced Case No. 3:24-mj-71385 AGT and DOJ Reference CRM-182-55420. A true and correct copy of this notification is attached to the Declaration as Exhibit B.

2

The October 2024 notification did not include a copy of any warrant. It did not explain the scope of data being sought. It did not indicate that years of email communications were at issue or that privileged attorney-client communications were at risk of disclosure. It stated only that Movant could file a motion to quash within seven days or Google would produce data "pursuant to applicable law."

No motion was filed in response to the October 2024 notification. Movant does not know whether Google produced data in response to that legal process. **If production occurred, it occurred without any privilege protocol and without Movant's knowledge or participation.**

### B. The November 2025 Search and Seizure Warrant

On November 20, 2025, this Court issued a Search and Seizure Warrant in Case No. 3:25-mj-71397 LB—a new and separate legal process—authorizing the FBI to compel Google LLC to produce data from Movant's email account. The Warrant identifies "INVESTIGATION OF 18 U.S.C. § 3512"—assistance to foreign tribunals under the Mutual Legal Assistance Treaty—and states that the data sought constitutes evidence of "offenses involving tax evasion, in violation of Indian criminal law."

The Warrant authorizes seizure of: (a) all email content from March 1, 2008 through July 31, 2011—a period that ended more than fourteen years ago; and (b) all account metadata from account creation to the present—including IP addresses, login timestamps, device identifiers, contact lists, and account activity records—spanning potentially seventeen or more years.

### C. The Constitutionally Inadequate Privilege Provision

The Warrant's sole reference to privilege protection states that the government must make "reasonable efforts" to "use methods and procedures that will locate and expose those categories of files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant or attorney-client privileged files to the extent reasonably practicable."

This boilerplate language fails to implement any of the procedural safeguards required by Ninth Circuit precedent. The Warrant does not:

(1) Require government waiver of the plain view doctrine as to electronic data, as contemplated by *CDT*;

(2) Require segregation of data by "specialized personnel or an independent third party" rather than case agents, as required by *CDT*, 621 F.3d at 1180;

(3) Establish a search protocol "designed to uncover only the information for which [the government] has probable cause," *id.*;

(4) Require destruction or return of non-responsive data, *id.*;

(5) Provide for magistrate oversight of privilege determinations, as required by *United States v. Tamura*, 694 F.2d 591, 596 (9th Cir. 1982);

(6) Afford Movant any opportunity to identify privileged communications before government review;

(7) Establish any filter team or taint team separate from case agents;

3

(8) Address the transmission of potentially privileged materials to foreign governments through MLAT channels.

### D. The Compressed Timeline

Google notified Movant of the November 2025 Warrant on December 3, 2025. The notification did not include the Warrant itself. Movant requested an extension and a copy of the Warrant on December 4. Google provided the Warrant on December 8 and stated that production would occur on December 10 unless Movant obtained a file-stamped motion from a court of competent jurisdiction.

Movant therefore had **two days** from receipt of the Warrant to retain counsel, analyze the complex constitutional issues, and file this motion. Movant resides in Virginia, approximately 2,800 miles from this Court. Proceeding pro se, Movant had no prior relationship with California counsel and faced the additional burden of identifying and retaining qualified counsel across the country within this compressed timeframe—during the December holiday period when attorney availability is significantly diminished.

## IV. LEGAL STANDARD

### A. The Court's Equitable Jurisdiction Under Rule 41(g)

Federal Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." When filed before indictment, such motions invoke the court's equitable jurisdiction. *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993). Such pre-indictment motions "are treated as civil equitable proceedings," and the district court must exercise "caution and restraint" before assuming jurisdiction. *Id.* (citing *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir. 1990)).

The Ninth Circuit applies a four-factor test derived from *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975): (1) whether the government displayed callous disregard for constitutional rights—the "*most important*" factor; (2) whether movant has an individual interest in and need for the property; (3) whether movant would be irreparably injured by denial of relief; and (4) whether movant has an adequate remedy at law. *Ramsden*, 2 F.3d at 324-25. "*If the balance of equities tilts in favor of reaching the merits . . . the district court should exercise equitable jurisdiction.*" *Id.* at 326.

### B. The Court's Inherent Supervisory Authority Over Electronic Searches

Federal courts possess inherent supervisory authority over the execution of search warrants to ensure compliance with constitutional requirements. *CDT*, 621 F.3d at 1178 ("[W]e must be vigilant in observing the guidance we have provided so that the public, the government and the courts of our circuit can be confident such searches and seizures are conducted lawfully"). The Ninth Circuit has recognized that electronic records require special protection because "parties involved in lawful activities may also encrypt or compress data for entirely legitimate reasons: *protection of privacy, preservation of privileged communications*, warding off industrial espionage or preventing general mischief such as identity theft." *Id.* at 1176.

In *CDT*, the Ninth Circuit, sitting en banc, adopted procedures from *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982), which require that when documents are intermingled and cannot be sorted on-site, "*the essential safeguard required is that wholesale removal must be monitored by the judgment of a neutral, detached magistrate.*" *Tamura*, 694 F.2d at

4

595-96. The *Tamura* court explained that "*[w]holesale seizure for later detailed examination of records not described in a warrant*" amounts to an "*investigatory dragnet that the fourth amendment was designed to prevent.*" *Id.* at 595.

### C. The CDT Five-Part Protocol: Binding Ninth Circuit Guidance

In *CDT*, Chief Judge Kozinski's concurrence—joined by five judges—articulated a five-part protocol that magistrates "*should insist*" upon in electronic search warrants to prevent them from becoming "*general warrants, rendering the Fourth Amendment irrelevant,*" 621 F.3d at 1176:

> (1) Magistrates should require the government to *waive reliance on the plain view doctrine* as to electronic data;
> (2) Segregation must be conducted by "*specialized personnel or an independent third party*" rather than case agents, *id.* at 1180;
> (3) Warrants must "*disclose the actual risks of destruction of information*" and not rely on general claims, *id.*;
> (4) The search protocol must be "*designed to uncover only the information for which [the government] has probable cause,*" *id.*;
> (5) The government must "*destroy or, if the recipient may lawfully possess it, return non-responsive data,*" *id.*

The Warrant here fails to incorporate any of these requirements. It contains no plain view waiver, no requirement for specialized personnel, no protocol designed to uncover only information for which probable cause exists, and no provision for return or destruction of non-responsive data.

### D. Statutory Authority in MLAT Context

The statutory framework expressly protects privileged materials. 28 U.S.C. § 1782(a) provides that "*[a] person may not be compelled to give testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.*" Similarly, 18 U.S.C. § 3512(a)(1) authorizes courts to issue "*such orders as may be necessary*" to execute MLAT requests—including orders establishing privilege protocols.

The Ninth Circuit has held that courts retain gatekeeping authority even for MLAT requests. In *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 571-72 (9th Cir. 2011), the court held that "*a district court may not enforce a subpoena that would offend a constitutional guarantee*" and may refuse requests causing "*egregious violation of human rights.*" While there is a "presumption in favor of granting" MLAT requests, *id.* at 567, judicial gatekeeping remains essential to ensure privilege protections are maintained.

The Federal Judicial Center's 2024 MLAT Guide confirms that federal judges "continue to serve as gatekeepers . . . ensuring that collection of requested foreign evidence meets the same standards as those required in U.S. cases . . . [including] protection of attorney-client . . . privileges."

### E. The Foundational Importance of Attorney-Client Privilege

The attorney-client privilege is "*the oldest of the privileges for confidential communications known to the common law.*" *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Supreme Court has recognized that digital devices contain "*the privacies of life*"

5

and that "[t]he fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." *Riley v. California*, 573 U.S. 373, 403 (2014).

Privilege determinations are inherently judicial functions. *See United States v. Zolin*, 491 U.S. 554 (1989). The Supreme Court has emphasized that even before in camera review for the crime-fraud exception, the party opposing privilege "*must present evidence sufficient to support a reasonable belief that such review may yield evidence that the crime-fraud exception applies.*" *Id.* at 572. The government cannot simply claim exceptions to bypass privilege protections; judicial determination is required.

## V. ARGUMENT

### A. Immediate Stay Is Necessary to Prevent Irreparable Harm

Once Google produces Movant's emails to the FBI for transmission to Indian authorities, disclosure of any attorney-client privileged communications cannot be undone. The Supreme Court has expressly recognized that privilege violations constitute irreparable harm: "*the right to maintain attorney-client confidences—the sine qua non of a meaningful attorney-client relationship—is 'irreparably destroyed' absent immediate*" judicial protection. *Mohawk Industries*, 558 U.S. at 108. The Court further acknowledged that "*a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are 'only imperfectly reparable'*" and preserved mandamus as a remedy for "consequential attorney-client privilege rulings." *Id.* at 111-12.

Courts have consistently recognized that "*disclosure of privileged information may cause irreparable injury.*" *Longo v. Premo*, 355 Or. 525, 532 (2014). Orders compelling disclosure of privileged material are commonly reviewed immediately because "*harm caused by wrongly compelling petitioner to disclose protected material is irreparable.*" *See Barker v. Barker*, 909 So. 2d 333, 336-37 (Fla. 2d DCA 2005) ("cat out of the bag" doctrine).

#### 1. The MLAT Context Creates Categorical Irreparable Harm

The MLAT context dramatically amplifies the irreversibility of any harm. Three factors support heightened scrutiny:

*First*, once data is transmitted through diplomatic channels to foreign authorities, no mechanism exists to retrieve privileged communications. U.S. courts lose practical ability to remedy improper disclosure. Unlike domestic cases where suppression might provide a remedy, international transmission creates a categorical, irreversible harm.

*Second*, foreign jurisdictions are not bound by U.S. privilege law. Many civil law countries do not recognize attorney-client privilege for in-house counsel. Disclosure may constitute waiver under foreign law even if the privilege would be recognized domestically. India's privilege protections differ materially from those guaranteed by U.S. constitutional principles.

*Third*, Movant has no procedural mechanism to challenge disclosure in any foreign proceeding. As the Federal Judicial Center notes, the "MLAT process [was] created to facilitate international cooperation" and "benefits available only to governmental officials." Private citizens have no standing to participate in MLAT proceedings in the requesting country.

#### 2. The October 2024 Process Demonstrates Harm Is Not Merely Prospective

6

The October 2024 legal process demonstrates that the harm Movant fears is not merely prospective. If data was produced fourteen months ago without any privilege protocol, Movant's privileged communications *have already been disclosed* to government agents—and potentially already transmitted to foreign authorities. This Court should require the government to disclose whether such production occurred and, if so, what protocols were employed to protect privileged communications.

### 3. The Balance of Hardships Strongly Favors a Stay

The balance of hardships strongly favors a brief stay. The data sought is *fourteen to seventeen years old*. A 45-day extension to allow Movant to retain counsel will not prejudice any legitimate government interest. The data is static and historical. The underlying foreign investigation has been ongoing for years. There is no risk of evidence destruction or flight—this is email data already in Google's custody that cannot be modified or deleted by Movant.

## B. The Warrant Lacks Constitutionally Required Privilege Protections

### 1. Privilege Determination Is a Judicial Function That Cannot Be Delegated

The Fourth Circuit has squarely held that privilege determination is a judicial function that cannot be delegated to the executive branch. In *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) (the "Baltimore Law Firm" case), the court reversed the district court's denial of injunctive relief where IRS and DEA agents executed a warrant at a law firm and seized 52,000 emails—of which only 116 (0.2%) related to the investigation target.

The Fourth Circuit held:

> *Put simply, a court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute.*

*Id.* at 176. The court identified three critical deficiencies:

*First*, the filter team protocol "*delegated judicial functions to non-lawyer members . . . authoriz[ing] paralegals and IRS and DEA agents to designate seized documents as nonprivileged.*" *Id.* at 176-77.

*Second*, the magistrate judge "*erred by prematurely authorizing [the] Filter Team and Protocol in ex parte proceedings*" and "*should have conducted adversarial proceedings.*" *Id.* at 178-79.

*Third*, the protocol created an appearance of unfairness: "*it surely appears . . . that 'the government's fox [has been] left in charge of the [Law Firm's] henhouse.'*" *Id.* at 181.

The court held that "*the magistrate judge (or an appointed special master)—rather than the Filter Team—must perform the privilege review of the seized materials.*" *Id.* at 179. This holding remains good law; rehearing en banc was denied January 28, 2020.

As recently as August 2024, the Fourth Circuit reinforced its skepticism. In *United States v. Doe (In re Search Warrants Issued February 18, 2022)*, No. 23-4330 (4th Cir. Aug. 2, 2024), Judge Quattlebaum's concurrence warned that "*protocols like this one run the risk of hollowing out both the attorney-client privilege and the work-product doctrine. Mitigating that risk . . . would be worth the costs of possible delay.*" Slip op. at 25-26.

7

### 2. Filter Teams Pose Structural Risks to Privilege Protection

The Sixth Circuit has identified the inherent structural problems with filter teams. In *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006), the court observed that such teams "*pose 'inevitable, and reasonably foreseeable risks, to privilege'*"; possess "*conflicting interest in pursuing investigation*"; and provide "*[no] check . . . against possibility that government's team might make false negative conclusions, finding validly privileged documents to be otherwise*" because no one else sees the documents before release. *Id.*

### 3. Even Permissive Circuits Require Meaningful Protocols

Even circuits that have approved filter teams have required meaningful protections. The Eleventh Circuit's *In re Sealed Search Warrant*, 11 F.4th 1235 (11th Cir. 2021) ("*Korf*"), represents the most permissive circuit view—yet still requires substantial safeguards. The court approved a Modified Filter-Team Protocol *only because*: (1) "*the Intervenors [privilege holders] conduct the initial privilege review*"; (2) "*Intervenors' permission or court order*" was required for release; (3) the filter team was "*composed of attorneys and staff from outside the investigating office*"; and (4) an "*adversarial hearing*" preceded implementation. *Id.* at 1241, 1250, 1256.

### 4. The Warrant Here Contains None of These Protections

The Warrant here contains none of the protections required by any circuit. There is no filter team—let alone one separate from case agents. There is no separation of personnel. There is no privilege log. There is no meet-and-confer. There is no judicial oversight. There is no adversarial hearing. There is no opportunity for Movant to identify privileged materials before government review. There is no plain view waiver. There is no provision for return or destruction of non-responsive data.

Movant does not argue that any particular protocol is constitutionally required. But *some* protocol is necessary—and here there is none. This deficiency is compounded by the MLAT context: the Warrant authorizes collection of data that will ultimately be shared with a foreign government through diplomatic channels—heightening the need for meaningful privilege protections before any disclosure occurs.

### C. The Ramsden Factors Support Equitable Relief

**Callous Disregard**—the "most important" factor under *Ramsden*. The complete absence of privilege protections—in a warrant executed against an email account spanning seventeen years—demonstrates disregard for Movant's constitutional rights. Any such account will predictably contain attorney-client communications. The government knew or should have known this, yet obtained a warrant with no meaningful protocol for protecting privileged materials. The boilerplate minimization language fails to implement any of the requirements articulated in *CDT* and *Tamura*. This is compounded by the fact that an earlier legal process may have already resulted in production without any protocol.

**Individual Interest.** Movant has a significant interest in his email communications, which include privileged attorney-client communications, personal correspondence, and sensitive financial and medical information. The metadata component alone seeks to reveal seventeen years of Movant's digital life—including login patterns, device information, and contact networks. The Supreme Court has recognized that such comprehensive digital data implicates "*the privacies of life*." *Riley*, 573 U.S. at 403.

**Irreparable Injury.** Disclosure of privileged communications cannot be undone. As the Supreme Court recognized, privilege harm is "*only imperfectly reparable.*" *Mohawk*, 558 U.S. at 112. The Fourth Circuit has held that "the Government's review of privileged materials . . . *cannot be undone.*" *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 175. The October 2024 legal process demonstrates that irreparable harm may have *already occurred*—making judicial intervention all the more urgent.

**Adequate Remedy at Law.** Movant has no adequate remedy at law. As the Ninth Circuit recognized in *Ramsden*, when a movant may lack an opportunity to later challenge a seizure, there is no adequate remedy. 2 F.3d at 326. This is particularly true where, as here, data will be transmitted to a foreign government through MLAT diplomatic channels—at which point any U.S. court remedy would be wholly ineffective. No mechanism exists for retrieval of data once transmitted internationally.

### D. Extension of Time Is Warranted Under Pioneer Factors

Courts apply the *Pioneer Investment Services v. Brunswick*, 507 U.S. 380, 395 (1993), factors when evaluating extensions: (1) the danger of prejudice to the opposing party; (2) the length of delay; (3) the reason for the delay; and (4) good faith. The "*[d]etermination is at bottom an equitable one, taking account of all relevant circumstances.*" *Id.* The Ninth Circuit applies a "*flexible approach*" that "will ordinarily examine all of the circumstances involved rather than holding that any single circumstance in isolation compels a particular result." *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc).

All factors favor an extension:

**No prejudice.** The data sought is fourteen to seventeen years old. A 45-day extension causes no prejudice to any legitimate government interest.

**Brief delay.** The requested 45-day extension is modest given the complexity of the constitutional issues.

**Compelling reasons.** Movant resides in Virginia, 2,800 miles from this Court. Movant received the Warrant only two days before Google's production deadline. The December holiday period compounds the difficulty of retaining qualified counsel. The constitutional issues require specialized expertise in Fourth Amendment, privilege, and MLAT law.

**Good faith.** Movant filed this motion immediately upon receiving the Warrant rather than allowing the deadline to pass. Movant has requested only the time necessary to retain counsel—not indefinite delay.

Courts routinely grant pro se litigants 14-45 days to retain counsel in complex matters. *See Haines v. Kerner*, 404 U.S. 519 (1972) (courts must "hold [pro se pleadings] to less stringent standards than formal pleadings drafted by lawyers"); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) ("[W]e have an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.").

### VI. CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court:

1. **STAY** any production of data by Google LLC pending resolution of this motion and establishment of a constitutionally adequate privilege protocol;

2. **SEAL** any data already produced pending establishment of a privilege protocol consistent with *CDT* and *Tamura* requirements;

3. **REQUIRE** the government to disclose whether data was produced in response to the October 2024 legal process (Case No. 3:24-mj-71385 AGT), and if so: (a) what privilege protocols were employed; (b) whether privileged materials were identified; and (c) whether any data has been transmitted to foreign authorities;

4. **REQUIRE** the government to disclose whether any other Google accounts associated with Movant have been subject to legal process under Case No. 3:25-mj-71397 LB or any related matter;

5. **EXTEND** Movant's time to retain counsel by forty-five (45) days from the date of any order;

6. **ESTABLISH** a privilege protocol consistent with *CDT* requirements, providing for: (a) government waiver of the plain view doctrine as to electronic data; (b) a filter team with procedures consistent with applicable circuit precedent and composed of personnel separate from case agents; (c) first-instance privilege review by Movant with adequate time to create a privilege log; (d) meet-and-confer procedures for disputed materials; (e) judicial resolution of privilege disputes; (f) no release of materials to case agents or foreign authorities without court order or Movant's consent; and (g) provision for return or destruction of non-responsive data; or alternatively,

7. **APPOINT** a special master to conduct privilege review, as authorized by the Fourth Circuit in *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 179;

8. **PROHIBIT** case agents from reviewing any data, and prohibit transmission of any data to foreign authorities through MLAT channels, pending establishment of privilege procedures and resolution of any privilege disputes.

Movant is available for telephonic or video appearance at any time convenient to the Court.

DATED: December 09, 2025

Respectfully submitted,

*/s/ Bimal Sareen*

**BIMAL K. SAREEN**
*Movant, Pro Se*
12010 Ridge Knoll Drive, Apt 6
Fairfax, Virginia 22033
Telephone: (703) 477-9672
Email: bksareen9@gmail.com

10

Case No. 3:25-mj-71397 LB

## CERTIFICATE OF COMPLIANCE

    Pursuant to Civil Local Rule 7-11, the undersigned certifies that before filing this Emergency Motion, Movant did not contact the Office of International Affairs of the U.S. Department of Justice or any other government counsel to request concurrence with the relief sought. The compressed timeline made such consultation impracticable: Movant received the Warrant on December 8, 2025, and Google's production deadline is December 10, 2025—leaving only two days to analyze complex constitutional issues and prepare this filing. Movant resides in Virginia, approximately 2,800 miles from this Court. Movant respectfully submits that the irreversible nature of the threatened harm and the impossibility of meaningful consultation within the time available justify ex parte submission of this emergency motion.

DATED: December 09, 2025

_____
**BIMAL K. SAREEN**